# SIDNEY TURNER DYER, Individually and as Substituted Trustee, et al.

## *vs.*

## CHARLES J. DOBLER.

*Municipal Assessment—Time of Inception of Lien.*

The lien of a municipal assessment, when no time is expressly named by the statute, ordinarily accrues at the time of the assessment. p. 684

Under Baltimore City Charter, Sec. 185, providing that all sums assessed by the Commissioners for Opening Streets, upon property deemed by them to be benefited, shall be liens until paid on the property so assessed, the lien attaches at the time when, under Section 177, the review of the commissioners is closed and a corrected statement of the valuations and assessments is recorded in their book of proceedings and certified under the hands and seals of the commissioners and their clerk, and the parties interested notified that the assessments have been completed. pp. 684, 688

That an appeal is taken from the action of the commissioners cannot affect the existence of the lien, although it is subject to modification or defeat by the judgment of the court to which the appeal is taken. p. 688

*Decided February 9th, 1921.*

Appeal from the Circuit Court of Baltimore City (STANTON, J.).

The cause was argued before BOYD, C. J., PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Arthur W. Machen, Jr.,* and *Roger B. Williams,* with whom were *Hershey, Machen, Donaldson & Williams* on the brief, for the appellants.

*Charles F. Stein,* with whom was *Charles Lee Merriken* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the court.

The appellants in this case sold to Charles W. Schaffer a lot of ground situated in the City of Baltimore, at and for the sum of $20,000. By the contract of sale, dated the 19th day of January, 1920, the vendors were to convey unto the vendee, his heirs and assigns, upon his complying with the terms of sale, the said lot of ground *"in fee simple by good and merchantable title."*

Thereafter Schaffer transferred and assigned all his rights under said contract to Charles J. Dobler, the appellee.

On May 17th, 1915, long prior to the execution of the aforegoing contract, Ordinance No. 618 was passed by the Mayor and City Council of Baltimore and "approved May 17, 1915," for the condemnation and opening of the Key Highway.

On or about January 3rd, 1916, "the Commissioners for Opening Streets," acting under said ordinance and in accordance with the established procedure in such cases, filed their "final and corrected statement of damages, expenses and benefits" in the proceedings for the condemnation and opening of said street or highway, in which statement they entered against said lot of ground, then owned and held by the appellants, or those from whom they now claim, an assessment of $1,185 as the benefits that the said lot of ground would receive from the opening of said highway.

The owners of said lot of ground, being dissatisfied with the assessment of benefits charged against it, appealed from the action of the Commissioners to the Baltimore City Court, where the appeal was pending at the time of said sale to Schaffer, and where it is still pending.

The bill filed by the appellee in this case for the specific performance of said contract of sale alleges that the appellants, when called upon by the appellee, refused to convey to him the lot of ground bought by his assignor from them unless the appellee paid to them the whole amount of the purchase money therefor, $20,000, without any abatement or re-

duction on account of said unpaid benefit assessment, which the appellants contend was not at the time of the sale to Schaffer, or now, a lien on said lot of ground.

As stated by the appellants in their brief, the only question in this case is whether at the time of the execution of the contract of sale of the lot of ground to Schaffer the said benefit assessment for the opening of the Key Highway under said ordinance was a lien upon the property sold, or an encumbrance thereon by reason of which the appellants are unable to convey the said lot of ground to the appellee in *"fee simple by a good and merchantable title,"* while the said assessment is outstanding, undisposed of or unpaid.

This question was presented to the court below by a demurrer to the appellee's bill, which was overruled, and the question is now before this Court on appeal from the ruling of that court upon the demurrer. It is said in 28 *Cyc.* 1200: "The lien of an assessment must exist and attach according to the terms and conditions of the statute creating it, such statutes usually fixing the time at which it shall attach. (*Eagle Manufacturing Company* v. *Davenport,* 101 Iowa 493, 38 L. R. A. 480). As a general rule, when no time is expressly fixed by the statute for the lien to take effect, it accrues upon the assessment of the tax." *Lyon* v. *Alley,* 130 U. S. 177, 32 L. ed. 899, and other cases found in note to *Cyc.*

In the cases cited by the appellants, chiefly New York cases, it was held that the lien attached at a later time, but in those cases the statute expressly fixed such subsequent time for the lien to attach.

By the statute controlling in this case the Commissioners for Opening Streets were made the second sub-department of review and assessment," and when an ordinance is passed for the opening of a street or highway, they are required to give notice of their first meeting to be held for the execution of the ordinance. At such meeting, in addition to ascertaining the amount of damages that may be caused the owner of any

rights or interests in any ground or improvement by the
opening of said street, the Commissioners

"shall proceed to assess all the ground and improve-
ments, * * * the owners of which, as such, the said
commissioners shall decide and deem to be directly bene-
fited by accomplishing the object authorized in the
ordinance." (Sec. 175 of the City Charter.)

Section 177 provides that

"as soon as the commissioners aforesaid shall have
completed the valuation of damages to be ascertained
by them * * * they shall cause a statement thereof to
be made out for the inspection of all persons desiring
information of its contents, and such statement, to-
gether with an explanatory map or maps, shall contain
a description of each separate lot or parcel of ground
deemed to have sustained damage, * * * and the amount
of damage as valued by the commissioners; * * * and
in like manner a description of each parcel of ground
deemed by the commissioners to be benefited, the name
or names of such person or persons as may be sup-
posed to have any interest or interests therein, and the
amount assessed thereon for benefits; and the said
commissioners shall cause a notice to be published
* * * stating the extent of the ground covered by the
assessment, and that such statement and maps are
ready for the inspection of all persons interested there-
in, and that the commissioners will meet at their office
on a day to be named in said notice * * * for the pur-
pose of reviewing any of the matters contained in
said statement to which any person claiming to be
interested shall make objection; and the commission-
ers shall meet at the time and place so appointed, and
shall hear and consider all such representations or
testimony on oath or affirmation, * * * in relation to
any matter in said statement which shall be offered to
them on behalf of any person claiming to be interested
therein, and the said commissioners shall make all such
corrections and alterations in the valuation, assess-

ments, and estimates, * * * as in their judgment shall appear to them * * * to be just and proper; * * * and after closing such review the commissioners shall make all such corrections in their statement * * * as they shall deem proper, and cause such statement as corrected to be recorded in their book of proceedings, and certified under the hands and seals of said commissioners and their clerk, and notify all persons interested * * * that the said *assessments have been completed,* and that the parties affected thereby are entitled to appeal therefrom * * * to the Baltimore City Court."

Section 179 provides that an appeal from the action of the Commissioners to the Baltimore City Court may be taken by the party appealing, upon his filing his petition asking the court to review such action of the Commissioners, and upon the filing of his petition the court shall appoint a day for hearing said appeal, "which shall not be less than five or more than thirty days after expiration of the thirty days limited for taking appeals." It is then further provided by said section of the Charter that "the court shall direct the clerk of the said court to issue a *subpoena duces tecum* to the clerk of the Commissioners for Opening Streets, requiring him to produce and deliver to the said court the records of the proceedings of the said Commissioners in the case," and the party appealing is by said section "secured in the right of a jury trial."

The jury in such case is to

"try any question of facts and if necessary to view any property * * * to ascertain and decide on the amount of damages or benefits, under the direction of the court; and the said court shall not reject or set aside the record of the proceedings of the said commissioners for any defect or omission in either form or substance, but shall amend or supply all such defects and omissions and increase or reduce the amount of damages and benefits assessed, * * * as the said court shall deem just and proper, and shall cause the proceedings

and decisions on said returns and appeals to be entered in the book containing the record of the proceedings of the commissioners certified by the clerk, under the seal of the court, and the book to be transmitted to said commissioners, which shall be final and conclusive in every respect, unless an appeal be taken to the Court of Appeals."

Section 185 provides that:

"All sums of money assessed by the commissioners aforesaid, upon property deemed by them to be benefited, shall be and continue liens on each several pieces of property so assessed, to the amount of its particular assessments, until the same shall be paid to the city."

It is contended by the appellants that although Section 185 provides that the assessment shall be and continue a lien on the property deemed by the Commissioners to be benefited by the opening of the highway, it does not state or disclose the time at which the lien attaches, and that under the statute the lien was not intended to attach until the amount of each and all of the assessments were definitely ascertained and fixed beyond change or modification by appeal or otherwise, and this they claim could not be accomplished until it was definitely known that the aggregate amount of assessments was not in excess of the damages awarded and the expenses of such proceedings, for if so, under the decisions of this Court (*Maryland Trust Company* v. *Mayor and City Council of Baltimore,* 125 Md. 401; and *Mayor and City Council of Baltimore* v. *Maryland Trust Company,* 135 Md. 36), they would have to be proportionately reduced to the amount of such damages and expenses, and that it was at such time and not until then that the assessment became a lien and so remained until paid by the city. We, however, do not agree with the appellants in this contention.

The assessments alluded to in the statute are those "assessed by the Commissioners" and not those fixed or estab-

lished upon appeal from the action of the Commissioners, or those subsequently established .when it is found that the aggregate assessments exceed the damages awarded and expenses, and as to the assessments so made by the Commissioners the statute declares that *"they shall be and continue liens"* until paid to the city.

It is true that the statute does not in express terms state that the sums of money so assessed shall be and continue liens from any stated time, but by a reasonable interpretation of the language of the statute, the lien attaches at the time when, under Section 177 of the Charter, the review of the Commissioners is closed and a corrected statement of the valuations and assessments is recorded in their book of proceedings and certified under the hands and seals of said Commissioners and their clerk, and the parties interested notified that *"the assessments have been completed."*

But should we be wrong in our interpretation of the statute—that it expressly discloses the time when the lien attaches—the lien, nevertheless, under the above cited authorities, attaches at the time stated. It cannot, we think, be successfully contended that, in the absence of an appeal from the action of the Commissioners, the lien would not attach at the time of the completion of the assessment made by them, and the mere taking of an appeal would not defeat the attaching of a lien at such time, but pending such appeal the sums assessed by the Commissioners would continue as liens, subject to modification or defeat by the judgment of the court to which the appeal was taken; and therefore, as the appeal in this case is still pending, the sum assessed by the Commissioners against said lot of ground continues as a lien thereon.

The order overruling the demurrer will be affirmed and the case remanded.

> *Order affirmed and case remanded, with costs, to the appellee.*

ADKINS, J., dissents.